UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-CR-00050-JFH |
| | ) |
| LEE HOLT and JENNIFER | ) |
| CHARISA HARRINGTON, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court, by referral of Chief District Judge John F. Heil, is defendant Lee S. Holt's Motion to Compel Disclosure of Confidential Informant (Doc. 66), to which the plaintiff responded (Doc. 78). Defendant Jennifer C. Harrington properly joined the Motion pursuant to LCrR47-10. (Doc. 75). For the reasons set forth below, the Court finds and concludes that the defendants' Motion to Compel Disclosure of Confidential Informant should be granted.[1]

### I. Background

This case arises out of an investigation into the distribution of methamphetamine. At the hearing on the motion, Oklahoma Bureau of Narcotics (OBN) Agent Tara Winter

---

[1] At the May 21, 2024 hearing on the instant motion and the defendants' suppression motion, the attorneys for all parties agreed that the Motion to Compel Disclosure of Confidential Informant is a "matter that does not dispose of a charge or defense," such that it may be determined by the undersigned in an order pursuant to Fed. R. Crim. P. 59(a); *see also* 28 U.S.C. § 636(b)(1)(A). Of course, the Chief District Judge "may reconsider any pretrial matter . . . where it [is] shown that [this Order] is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Crim. P. 59(a).

testified that, in June of 2023, the OBN began investigating Michael Leach for the distribution of methamphetamine. In June and July of 2023, the OBN allegedly used a confidential informant (CI) to purchase drugs from Mr. Leach on two occasions in Claremore, Oklahoma. During one of the transactions, Mr. Leach allegedly informed the CI that his source was "up the hill." At the hearing, the plaintiff claimed that "'up the hill' equates to west of Collinsville."

The OBN applied for a GPS tracker warrant for a blue Nissan Murano, which was the vehicle that the CI identified as belonging to Mr. Leach. On June 27, 2023, OBN Agent McClaren installed the tracker on Mr. Leach's vehicle, and the OBN tracked the vehicle for approximately two months. On July 17, 2023, the CI informed OBN agents that Mr. Leach planned to meet with his supplier. The GPS tracker data for the Murano indicated that Mr. Leach went to Collinsville and briefly visited a house at 117 North 21st Street in Collinsville. The CI then allegedly met up with Leach after his return to Claremore and purchased methamphetamine from Leach for $100. OBN agents further reviewed the tracker data and determined that Leach had travelled to the Collinsville address a total of nine times during the tracker surveillance period.

Agent Winter performed a records check, which revealed the house at the Collinsville address to be the residence of Mr. Holt. (Doc. 66-1, p. 2). On August 21, 2023, OBN Agents Winter and Jodi Willingham conducted a trash pull at the defendants' residence and found two small plastic bags containing residue of a crystal-like substance, one of which presumptively tested positive for methamphetamine, a number of syringes, and mail addressed to the defendants at that address.

On August 23, 2023, Agent Winter applied for search warrants from Cherokee Nation Tribal Court and Tulsa County District Court to search the residence for evidence of the distribution of controlled dangerous substances. (*See* Doc. 66-1; Doc. 66-2). A Cherokee Nation Judge issued a search warrant on the same day, and a Tulsa County Judge issued a search warrant on the following day, August 24, 2024, after twice requesting additional information from Agent Winter. In the final Affidavit submitted to Tulsa County, Agent Winter noted that: "Leach described to the informant that the location of his source was 'up the hill'. Keetonville hill is a known landmark in the area on Highway 20 between the Claremore and Collinsville areas." (Doc. 66-2, p. 2). Agent Winter conducted a search of the residence on August 29, 2023, which resulted in the seizure of over 100 grams of methamphetamine, a Rossi firearm, alleged drug proceeds, and scales.

On March 19, 2024, the grand jury returned a five-count Superseding Indictment (Doc. 47) charging the defendants with being Felons in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Counts One and Two); Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii) (Count Three); Maintaining a Drug-Involved Premises, in violation of 21 U.S.C. §§ 856(a)(1) and 856(b) (Count Four); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Five).

At issue in the instant motion is whether the identity of the CI should be disclosed to defendants. The defendants argue that disclosure is necessary, as the CI "is the only

person known to have knowledge of the source of Leach's meth." (Doc. 66, p. 7). In response, the plaintiff argues that the "Defendants can only speculate to the value of the confidential informant's potential testimony" and have failed to meet their burden of demonstrating that disclosure is necessary to prepare their defense. (Doc. 78, p. 5).

## II.  Discussion

"Due to the strong public interest in furthering effective law enforcement, the government enjoys a privilege to withhold from disclosure the identity of persons who furnish law enforcement officers with information on criminal acts." *United States v. Mendoza–Salgado*, 964 F.2d 993, 1000 (10th Cir. 1992). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States,* 353 U.S. 53, 59 (1957). However, it is a limited privilege that "must give way to fairness when disclosure of the informer's identity 'is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause.'" *Mendoza-Salgado*, 964 F.2d at 1000 (quoting *Roviaro*, 353 U.S. at 60-61).

"The need for disclosure depends on the 'particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* (quoting *Roviaro*, 353 U.S. at 62). "[T]he problem 'calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense."

4

*Id.* (citation omitted). "[S]peculation regarding what an informant might possibly testify to is not sufficient to require disclosure." *United States v. Halbert,* 668 F.2d 489, 496 (10th Cir. 1982) (citations omitted). Disclosure of an informant is not required where the informant is not a witness or a participant in the crime charged, *id.*, or where "the informant is a mere tipster." *United States v. Morales*, 908 F.2d 565, 568 (10th Cir. 1990). Ultimately, the "defendant seeking disclosure of the identity of a confidential informant has the burden of demonstrating a need for disclosure." *United State v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992) (citing *Roviaro*, 353 U.S. at 59).

As noted by the defendants, "Leach is the only identified recipient of Mr. Holt's alleged meth distribution." (*See* Doc. 66, p. 7). The defendants argue that the CI "could describe Leach's nervousness to meet new people or expand on what 'up the hill' meant to someone involved in the illicit drug trade." *Id*. They further argue that "because the [CI] had previously bought drugs from Leach, it could be likely that the [CI] would have personal knowledge as to whether Mr. Holt was in fact involved in illegal drug trades." *Id*. at p. 7-8. The defendants argue that the CI's information is thus critical to the defense. *Id*. at p. 8.

The defendants cite *Roviaro* in support of their motion. In *Roviaro,* the Supreme Court set aside a defendant's drug conviction where the government did not identify or produce an informant who "was the sole participant, other than the accused, in the transaction charged." 353 U.S. at 64. Roviaro was indicted on a charge that he sold heroin to the informant. *Id*. at 55. Thus, the informant was "the only witness in a position to amplify or contradict the testimony of government witnesses." *Id*. at 64-65. The Court

5

held that it was prejudicial error for the trial court to permit the government to withhold disclosure, because the informant's "possible testimony was highly relevant and might have been helpful to the defense." *Id.* at 63-64.

While the plaintiff here argues that the CI was not a participant in the charged conduct, the original information leading the OBN agents to the defendants' residence came from the CI, and the plaintiff's theory of the case appears to be that the methamphetamine that the CI purchased from Mr. Leach came from the defendants' residence. The undersigned is unaware of any evidence of *any* instance of distribution or intended distribution by the defendants, except for the plaintiff's inference that Mr. Leach was purchasing from the defendants at their Collinsville residence the methamphetamine that Leach then sold to the CI. That information derives from the CI's controlled purchases of methamphetamine from Mr. Leach, the CI's identification of the blue Murano as belonging to Leach, which led to the tracker warrant and GPS data points upon which the plaintiff relies in this prosecution, the CI's report to law enforcement that Leach indicated to the CI that Leach's "supplier" was "up the hill," the inference that either the CI or OBN agents inferred that "up the hill" meant or equated to Collinsville where the defendants resided, and the suggestion that the methamphetamine the CI purchased from Leach on July 17, 2023 was methamphetamine that Leach had just obtained from the defendants' Collinsville residence.

Moreover, the plaintiff has not definitively stated that it will not call the CI as a witness or attempt to introduce through a case agent information obtained from the CI. Even prior to the initiation of this prosecution against the defendants, and continuing to

6

today, the plaintiff has continuously relied upon evidence of the CI's controlled buys with Mr. Leach and related information provided directly by the CI. That was key evidence leading to the search warrant that resulted in obtaining the methamphetamine evidence from the defendants' Collinsville residence.

Indeed, in its Trial Brief filed yesterday, the plaintiff (1) indicates that it "anticipates calling approximately 10 witnesses," but does not indicate who those witnesses are or that the CI is excluded from that list, (2) lists the Leach GPS Data as the first exhibit among 42, (3) references in the *first sentence* of its "Factual Statement" the OBN's use of the CI "to purchase methamphetamine from Michael Leach," (4) notes that Leach identified to the CI "his supplier as 'being up the hill,'" (5) states that the CI identified the blue Murano that was then tracked, and (6) alleges facts in support of its claim that the methamphetamine the CI purchased came from the defendants' residence. (*See* Doc. 93 at 2-4).

While the Court does not know how or whether the plaintiff will be permitted to present such evidence at trial, it is clear that the information allegedly obtained from the CI is central to the foundation of the plaintiff's prosecution here, and the plaintiff continues to rely upon information from the CI to support the possession with intent to distribute and maintenance of a drug-involved premises charges against the defendants. The CI was *not* just a tipster or a person uninvolved or distant from the evidence upon which the plaintiff relies to prosecute these defendants. The CI and information supplied by the CI were central to the inception of the investigation and charging of the defendants in this case. Fairness dictates that the defendants should be able to identify the CI and

consider the CI's involvement, test whether additional information was allegedly conveyed by Mr. Leach, determine whether the CI has additional knowledge (or lack thereof) relating to the defendants, determine whether the CI obtained any further information about Leach's alleged supplier, determine whether any additional context was provided that would support the plaintiff's theory that "up the hill" meant Collinsville or the defendants' house or something else, and test the credibility of the CI and strength of the information provided by the CI about Leach's alleged supplier. Such information could be potentially exculpatory or lead to exculpatory evidence and, at a minimum, could certainly bear upon the strength or weakness of the plaintiff's case against the defendants, which must be proven beyond a reasonable doubt in order to obtain a conviction.

Thus, at the very least, the Court finds that the CI's identity and the "contents of his communication" are "relevant and helpful to the defense of [the] accused or is essential to a fair determination" of the case, such that the limited privilege "must give way." *Roviaro*, 353 U.S. at 60-61.

### III. Conclusion

On the particular circumstances of this case, taking into consideration the charges against the defendants, potential defenses, and possible significance of the CI's testimony, as well as balancing the public interest against the defendants' right to prepare and present a defense, the Court determines that the Motion to Compel Disclosure of the Confidential Informant (Doc. 66, 75) should be, and is hereby, **granted**. *See Roviaro*, 353 U.S. at 62. The defendants have shown that information obtained from disclosure of the CI could aid

in their defense and their need for disclosure outweighs the public's need to protect the CI's identity.

IT IS SO ORDERED this 31st day of May, 2024.

*Christine D. Little*

Christine D. Little
United States Magistrate Judge