IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                               Case No. 24-CR-0050-JFH

LEE HOLT,
JENNIFER CHARISA HARRINGTON,

        Defendants.

## OPINION AND ORDER

Before the Court is Defendants' Joint Objection [Dkt. No. 103] to Magistrate Judge Little's Report and Recommendation [Dkt. No. 97] on Defendants' Motion to Suppress [Dkt. No. 67]. The Government has filed a Response in opposition to Defendants' Objection [Dkt. No. 111], and this matter is ripe for consideration. For the reasons stated below, Defendants' Joint Objection is overruled.

## BACKGROUND

On February 20, 2024, Defendants were charged by indictment with felon in possession of a firearm, possession of methamphetamine with intent to distribute, maintaining a drug-involved premises, and possession of a firearm in furtherance of drug trafficking crimes. Dkt. No. 47. On May 9, 2024, Defendant Lee Holt, joined by Defendant Harrington, filed a Motion to Suppress [Dkt. No. 67]. In the Motion to Suppress, Defendants argue that the Cherokee Nation search warrant, which was executed upon their residence and led to their arrest, was issued without probable cause, and, further, that officers could not have relied on the warrant in good faith.

Defendants' Motion to Suppress was referred to Magistrate Judge Christine D. Little. Dkt. No. 70. On May 21, 2024, a hearing was held on Defendants' motion. Oklahoma Bureau of

Narcotics ("OBN") Agent Tara Winter testified at the motion hearing. Agent Winter testified that in June of 2023, the OBN utilized a confidential informant to purchase methamphetamine from a drug dealer named Mike Leach. Dkt. No. 112, p. 7. Agents began tracking Leach via a GPS device installed on his vehicle and tracked him for approximately 2 months. *Id*. at 8. At some point during this surveillance period, the confidential informant informed the OBN that Leach was meeting with his supplier of methamphetamine who was "up the hill"; that day, Leach was observed going to a residence in Collinsville. *Id*. at 8-9; 53. In total, Leach visited this address – 117 N. 21st Street in Collinsville – approximately nine times during the period in which he was being surveilled; these visits were typically brief in duration. *Id*. at 9.

Agent Winter and another agent next conducted a "trash pull" on the address in question; numerous syringes and plastic baggies that tested presumptively positive for methamphetamine were found. *Id.* at 10. The agents also discovered mail addressed to Defendants in the trash; upon investigating the Defendants' backgrounds, agents discovered that Holt was a member of the Cherokee Nation and had a criminal history associated with drugs. *Id*. at 10-11.

With this knowledge in hand, Agent Winter sought from the Cherokee Nation District Court a warrant to search Defendants' address on August 23, 2023. Agent Winter submitted an affidavit, which stated, in part:

> In the month of June 2023, Oklahoma Bureau of Narcotics Agents had a GPS tracking device attached to a vehicle of a known distributor of methamphetamine. Based on the GPS tracker data, investigators developed this location, 117 N. 21st St. in Collinsville, Tulsa County, OK 74021, as a possible target source or supply for methamphetamine.

Dkt. No. 67-1.

The affidavit further stated that Agent Winter and another officer performed a "trash pull" at the address to be searched, which yielded two plastic baggies containing residue that tested

2

positive for methamphetamine, syringes, and mail addressed to both defendants. *Id*. Lastly, the affidavit stated that a records check revealed that Defendant Holt was a convicted felon with "prior charges from multiple states, including Oklahoma, Texas, and Missouri involving weapons, and the possession of controlled dangerous substances." *Id*. Specifically, the affidavit notes that in 1989 Holt pled guilty to "Illegal Transfer of Machine Gun" in Texas, and, in 2019, Holt pled guilty to "Unlawful Possession of Controlled Dangerous Drug with Intent to Distribute Methamphetamine, Carry Firearms after Conviction / During Probation Possession of a Controlled Dangerous Substance and Possession of Paraphernalia." *Id*.

On the same day on which she sought a warrant from the Cherokee Nation District Court, Agent Winter also apparently sought a warrant from a Tulsa County Judge using either an identical affidavit to the one submitted to the Cherokee Nation Court, or an affidavit that differed only in that it also noted that the Cherokee Nation District Court had already issued a search warrant. *See* Dkt. No. 112 at 14: 23-24; Dkt. No. 98-1. The Tulsa County Judge requested that further information be added to the initial affidavit that was submitted, and Agent Winter submitted another affidavit that contained additional detail regarding the GPS tracking data that led investigators to suspect Defendants were involved in drug sales. Dkt. No. 112 at 15; Dkt. No. 98-2. Agent Winter testified that she obtained the Tulsa County search warrant because, although Holt is Native American, Harrington is not. Dkt. No. 112 at 12: 16-17; 20: 19-22.

Ultimately, the Cherokee Nation warrant was served upon Holt and executed upon, resulting in the discovery of over 100 grams of methamphetamine, a Rossi firearm, alleged drug proceeds, and scales at Defendants' residence. Dkt. No. 112 at 13: 6-13. The Cherokee Nation warrant return was filed, but no return of the Tulsa County warrant was filed; the record is unclear whether law enforcement also relied upon the Tulsa County warrant in addition to the Cherokee

Nation warrant.  Dkt. No. 112 at 26; Dkt. No. 87 at 9.

On May 28, 2024, Magistrate Judge Little issued a Report and Recommendation that recommended denying Defendant's Motion to Suppress.  Dkt. No. 87.  In particular, Magistrate Judge Little opined that, though the Cherokee Nation search warrant lacked probable cause, the officers who executed the search warrant nevertheless relied upon the warrant in good faith, and, as such, suppression of the evidence from the execution of the warrant was not justified under *United States v. Leon*, 468 U.S. 897 (1984).  Dkt. No. 87, pp. 22, 26.  Given that the trial date for this matter was quickly approaching, the time for objections to the Report and Recommendation was curtailed.  Dkt. No. 87, at 30-31.[1]

Defendants timely objected to Magistrate Judge Little's Report and Recommendation, contending that the good faith exception to the exclusionary rule should not apply because the search warrant affidavit in question was so lacking in indicia of probable cause that no reasonable officer could have relied upon it in good faith.  Dkt. No. 103 at 3-8.  Defendants further object that suppression of evidence is warranted due to the Government's alleged violation of Fed. R. Crim. P. 41.  Dkt. No. 103 at 8-11.  The Government filed a response in opposition to Defendants' Joint Objection.  Dkt. No. 111.

## ANALYSIS

I. **Exclusion is not warranted under the good faith exception to the exclusionary rule.**

Defendants object to Magistrate Judge Little's recommendation that Defendant's Motion to Suppress be denied because, Defendants argue, Magistrate Judge Little errantly applied the *Leon*

---

[1] After the trial date in this matter was continued, Defendants were given a further opportunity to supplement their objections to the Report and Recommendation.  Dkt. No. 115.  No supplemental objection was filed.

good faith exception to the exclusionary rule. After de novo review, this Court cannot agree.

### A. Standard of review and applicable legal standards

This Court will "consider de novo" Defendant's objections to Magistrate Judge Little's Report and Recommendation. Fed. R. Crim. P. 59(b).

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In assessing whether probable cause exists for the issuance of a warrant, the United States Supreme Court has held that a magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A "fair probability" is "not an airtight guarantee; nor is it 'proof that something is more likely true than false.'" *United States v. Jenkins*, 819 F. App'x 651, 658 (10th Cir. 2020) (citing *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014)).

Scrutiny of a magistrate's decision to issue a warrant "should not take the form of *de novo* review," and the magistrate's decision "should be paid great deference" by a reviewing court. *Id*. at 236. The reviewing court should simply "ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. at 238-239 (internal citations omitted).

Exclusion is not warranted in every case in which there has been a violation of the Defendant's Fourth Amendment rights. In *United States v. Leon*, the United States Supreme Court held that suppression of evidence, even if obtained in violation of the Fourth Amendment, is not

5

warranted when an officer's conduct is objectively reasonable and, particularly, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." 468 U.S. 897, 922 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921. As such, an officer's acts are presumed to have been taken in good faith when the officer acts pursuant to a warrant. *United States v. Henderson,* 595 F.3d 1198, 1201 (10th Cir. 2010).

*Leon* describes four circumstances in which exclusion may be warranted, even though the officer's actions are supported by a warrant:

> (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";
>
> (2) where "the issuing magistrate wholly abandoned his judicial role";
>
> (3) where an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and
>
> (4) where the warrant is "so facially deficient…that the executing officers cannot reasonably presume it to be valid."

*Leon*, 468 U.S. at 923 (internal citations omitted); see also, *United States v. Smith,* 846 F. App'x 641, 645 (10th Cir. 2021).

### B. The good faith exception is applicable to these circumstances.

Of the four circumstances envisioned by *Leon*, in which exclusion may nevertheless be warranted despite the officer having obtained and relied upon a warrant, none are applicable to this case. Defendants argue that the affidavit in question was so lacking in indicia of probable cause that Agent Winter could not have reasonably believed that probable cause existed. This is simply not the case.

6

Agent Winter's Cherokee Nation warrant affidavit presented three bases for probable cause: Winter's representations regarding GPS data, the trash pull evidence, and Defendant Holt's criminal history. Magistrate Judge Little found that Agent Winter's representations regarding GPS data are wholly conclusory and could not contribute to any finding of probable cause. Dkt. No. 87 at 13-14. This Court agrees that the GPS data did not support probable cause.

Although not sufficient itself to establish probable cause, Defendant Holt's criminal history is relevant to the probable cause determination,. *See United States v. Artez*, 389 F.3d 1106, 1114-15 (10th Cir. 2004). Arguably, the evidence uncovered by OBN agents in searching Defendants' trash was sufficient, of itself, to justify issuance of the challenged warrant. *See United States v. Colonna*, 360 F.3d 1169 (10th Cir. 2004), *overruled on other grounds by United States v. Little,* 829 F.3d 1177 (10th Cir. 2016); *United States v. Jenkins*, 819 F. App'x 651 (10th Cir. 2020).[2] But considering Defendant Holt's criminal history - which included prior felony convictions for possession with intent to distribute controlled dangerous substances - in combination with the trash pull evidence, it is conceivable how the tribal court could determine there was probable cause for the issuance of the warrant. *See Colonna; Jenkins*, *supra*. While Magistrate Judge Little ultimately determined this insufficient to support probable cause (because Holt's drug convictions were somewhat dated), this Court is mindful that it should not apply de novo scrutiny[3] to the tribal judge's probable cause determination:

> We "accord 'great deference' to the probable-cause assessment of the state court judge who issued the warrant." *United States v. Pulliam*, 748 F.3d 967, 971 (10th Cir. 2014) (quoting *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009). "'[A]fter-the-fact, de novo scrutiny' of a magistrate's probable-cause determination

---

[2] Unpublished cases are not precedential but may be cited for persuasive value. See Fed. R. App. P. 32.1.

[3] Distinction should be drawn between this Court's de novo review of the Magistrate's Report and Recommendation versus a de novo review of the tribal court's probable-cause determination in issuing the warrant. *See* Fed. R. Crim. P. 59(b).

> is forbidden." *Biglow*, 662 F.3d at 1281 . . . . *See also United States v. Pulliam*, 748 F.3d 967, 971 (explaining that we defer to the warrant-issuing judge's conclusion that probable cause backed the warrant even if probable cause was borderline). Rather, we "review 'merely to ensure the Government's affidavit provided a "substantial basis" for reaching that conclusion.'" *United States v. Sadlowski,* 948 F.3d 1200, 1203 (10th Cir. 2020) (quoting *Biglow,* 562 F.3d at 1280).

*Jenkins*, 819 F. App'x at 658-59. Because the Court finds that the good faith exemption applies here, regardless of the probable cause determination, this Court need not expand further on this issue. If a reviewing court determines that exclusion is not warranted under the good faith exception, then it need not determine whether probable cause existed for issuance of the challenged warrant. *See United States v. Gonzalez*, 399 F.3d 1225, 1228 (10th Cir. 2005).

Defendant Holt's criminal history, considered alongside officers' discovery of plastic baggies containing methamphetamine residue within Defendants' trash provided sufficient indicia of probable cause such that Agent Winter could have reasonably believed that probable cause existed, especially following the tribal court's issuance of the warrant. Agent Winter's affidavit was not so "bare bones" as to render official belief in the existence of probable cause entirely unreasonable. *Leon*, 468 U.S. at 926.[4]

---

[4] Defendants argue that because the Tulsa County Judge declined to issue a warrant (on an identical warrant affidavit), this should have indicated to Agent Winter that the Cherokee Nation warrant was so lacking in indicia of probable cause that she could not reasonably rely upon it. This does not follow. Defendants' argument adopts an errant, overly rigid view of probable cause. "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. That two judges may make different probable cause determinations upon the same set of circumstances is neither surprising nor particularly meaningful; it certainly does not mean that the more exacting judge must necessarily be correct and the other, incorrect. Moreover, Defendant's argument ignores the actual good faith standard propounded in *Leon*. Nothing here indicates that the affidavit in support of the Cherokee Nation warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. Again, Defendant Holt's criminal history, considered alongside officers' discovery of plastic baggies containing methamphetamine residue within Defendants' trash provided sufficient indicia of probable cause.

## II. Exclusion is not warranted under Fed. R. Crim. P. 41.

Defendants argue that exclusion is justified because the search of Defendants' home was "federal in character" and, thus, in violation of Fed. R. Crim. P. 41 because it was not supported by a federal warrant. The Court finds that the search in question was not federal in character. Further, even if the warrant were federal in character, exclusion of the seized evidence would not be justified here.

### A. The search of Defendants' home was not federal in character.

Fed. R. Crim. P. 41(b)(1) provides: "a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant[.]" Rule 41 only applies to searches that are federal in character. *United States v. Millar*, 543 F.2d 1280, 1283 (10th Cir. 1976). A search is federal in character when "federal officers are directly involved in carrying out the search itself and in taking immediate custody of the fruits of the search." *United States v. Bookout*, 810 F.2d 965, 967 (10th Cir. 1987) (citing *United States v. Massey*, 687 F.2d 1348, 1355 (10th Cir. 1982)). A search is "not federal if only state officers participated directly in procuring the warrant, were present during the search itself, and took immediate custody of the fruits of the search." *Bookout*, 810 F.2d at 967 (citing *United States v. Gibbson*, 607 F.2d 1230, 1325 (10th Cir. 1979)).

The search at issue was carried out by state officers, following a state investigation, and pursuant to a warrant issued by the Cherokee Nation. It was not until after the search was conducted and evidence seized that there is any indication of federal involvement. Nor is there any evidence that federal prosecution was envisioned. Defendants argue that because Agent Winter knew that Defendant Holt was a member of the Cherokee Nation, she must have known that federal prosecution would result given the jurisdictional dictates of *McGirt v. Oklahoma*, 140

S. Ct. 2452 (2020). This argument ignores the possibility that the matter could have been prosecuted by the Cherokee Nation. Agent Winter testified that she was "not sure" where prosecution would take place when she sought and executed the warrant at issue. Dkt. No. 112 at 18:15. The Court has been given no reason to disbelieve this testimony. There is no evidence that federal prosecution was envisioned when the search was carried out. Accordingly, the search at issue was not federal in character.

        **B.    Even if the search were federal in character, exclusion would not be warranted here.**

Where Fed. R. Crim. P. 41(b)(1) is violated, suppression is warranted only if the rule violation was intentional, prejudicial, or of "constitutional import." *United States v. Krueger*, 809 F.3d 1109, 1113–14 (10th Cir. 2015). Defendants have not cited any authority indicating that the alleged violation of Rule 41 would constitute a violation of constitutional dimension. A violation of Rule 41 is "prejudicial" in the relevant sense, if absent the violation, "the search might not have occurred or would not have been so abrasive if the Rule had been followed[.]" *Id*. at 1114. Defendants do not argue that they have been prejudiced by the alleged Rule 41 violation. Defendants argue, instead, that circumstances establish that Agent Winter intentionally violated Rule 41 in a "deliberate attempt to avoid seeking approval from a federal magistrate." Dkt. No. 103 at 11.

First, Defendants suggest that, because Agent Winter knew Defendant Holt was Indian, she must have contemplated federal prosecution. Next, Defendants suggest that, because federal law enforcement became involved in the case after the warrant was executed, Agent Winter must have deliberately violated Rule 41. This Court does not agree. As noted previously, Agent Winter testified that she was unsure where the case would be prosecuted when she applied for and executed the warrant. Dkt. No. 112 at 18:15. Defendants have given this Court no reason to

disbelieve Agent Winter's testimony; the search was conducted on the residence of an Indian and a non-Indian in Indian territory – it is entirely understandable that Agent Winter would be unsure whether the case would ultimately be prosecuted by the State of Oklahoma, the Cherokee Nation, or the federal government. There is no evidence that any alleged violation of Rule 41 was intentional. Under the circumstances here even if there was a violation of Rule 41, exclusion would not be justified under the circumstances here.

## **CONCLUSION**

Upon de novo review of the issues raised in Defendants' Joint Objection to Magistrate Judge Little's Report and Recommendation [Dkt. No. 103], the Court finds that Defendants' Motion to Suppress [Dkt. No. 67] should be denied for all of the reasons set forth above.

IT IS THEREFORE ORDERED that Defendants' Joint Objection [Dkt. No. 103] is overruled, and the Court accepts Magistrate Judge Little's Recommendation that the Motion to Suppress be denied.

Dated this 23rd day of July 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE